O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WANDA CZAJKA,                    )    NO. SACV 09-00194-MAN
                                 )
              Plaintiff,          )
                                 )    MEMORANDUM OPINION
        v.                       )
                                 )    AND ORDER
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
              Defendant.          )
_____)

        Plaintiff filed a Complaint on February 20, 2009, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for a period of disability and disability
insurance benefits ("DIB").  On March 30, 2009, the parties consented to
proceed before the undersigned United States Magistrate Judge pursuant
to 28 U.S.C. § 636(c).  The parties filed a Joint Stipulation on
September 28, 2009, in which:  plaintiff seeks an order reversing the
Commissioner's decision and awarding benefits or, in the alternative,
remanding the matter for further administrative proceedings; and
defendant seeks an order affirming the Commissioner's decision.  The
Court has taken the parties' Joint Stipulation under submission without
oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On September 15, 1997, plaintiff filed a prior application for a period of disability and DIB, which was denied at the initial level. (Administrative Record ("A.R.") 73, 444.)  Plaintiff did not appeal the denial.  (A.R. 444.)

On April 26, 2006, plaintiff filed another application for a period of disability and DIB, alleging an inability to work from January 10, 1991, through December 31, 1995, the date last insured, due to open heart surgery and bilateral carpal tunnel syndrome.  (A.R. 13, 69-71, 77.)  Plaintiff has past relevant work experience as a commercial cleaner, hand packager, and assembler.  (A.R. 78, 448-50, 461-62.)

The Commissioner denied plaintiff's application initially and upon reconsideration.[1]  (A.R. 52-56, 59-63.)  On April 26, 2007, plaintiff filed a Request for Hearing before an administrative law judge.  (A.R. 51.)  On April 16, 2008, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Helen E. Hesse ("ALJ").[2]  (A.R. 444-57, 460-61, 465.)  Sami Nafoosi, a medical expert, and Alan Ey, a vocational expert, also testified at the hearing.  (A.R.

---

[1]   Both times, the Commissioner denied plaintiff's application due to the failure to provide medical records from January 10, 1991, through December 31, 1995, the relevant period.  (A.R. 52, 59.)  Indeed, most of plaintiff's responses in the documents submitted with her application, including the Disability Report and the Daily Activities Questionnaire, are not helpful to the Court as they relate only to her current impairments and abilities.

[2]   Elizabeth Reschke acted as an interpreter during the hearing. (A.R. 444.)

453-70.)  On September 2, 2008, the ALJ denied plaintiff's application. (A.R. 11-21.)   The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision.  (A.R. 4-6.)

### SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff did not engage in substantial gainful activity from January 10, 1991, the alleged onset date of disability, through December 31, 1995, the date she was last insured.  (A.R. 13.) The ALJ determined that plaintiff had the severe impairments of: bilateral carpal tunnel syndrome, status post bilateral carpal tunnel syndrome releases; right knee pain; and low back pain.[3]  (A.R. 13.)  The impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (A.R. 15.)

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to:

perform light work as defined in 20 [C.F.R.] 404.1567(b) except with the ability to stand and walk six hours in an eight hour workday and sit eight hours in an eight hour workday, with the ability to briefly change position for 1-3 minutes once every hour, occasionally push and pull with the right lower extremity, and occasionally climb stairs, bend, balance, stoop, kneel, crouch, or crawl, but no climbing of

---

[3]     The ALJ did not discuss plaintiff's open heart surgery, one of the conditions that plaintiff alleges limits her ability to work.  (A.R. 77.)  The record reflects that plaintiff had open heart surgery in March 2006 (A.R. 161), which is after the alleged period of disability.

ladders, ropes, or scaffolds, with the need to avoid work at
unprotected heights, use of vibrating tools, or with both
upper extremities, any power gripping, grasping, or power
torquing.

(A.R. 15.)  The ALJ found that plaintiff was unable to perform any past
relevant work.  (A.R. 19.)  Having considered plaintiff's age,
education, work experience, and RFC, and relying upon testimony from the
vocational expert, the ALJ found that jobs existed in the national
economy that plaintiff could have performed through the date last
insured, such as cashier II, parking lot attendant, and arcade
attendant.  (A.R. 20-21.)

Accordingly, the ALJ concluded that plaintiff was not disabled, as
defined in the Social Security Act, from January 10, 1991, the alleged
onset date, through December 31, 1995, the date last insured.  (A.R.
20.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
decision to determine whether it is free from legal error and supported
by substantial evidence in the record as a whole.  Orn v. Astrue, 495
F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant
evidence as a reasonable mind might accept as adequate to support a
conclusion.'"  Id. (citation omitted).  The "evidence must be more than
a mere scintilla but not necessarily a preponderance."  Connett v.
Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the

4

record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following four issues:  (1) whether the ALJ properly found that plaintiff was capable of performing the jobs of cashier II, parking lot attendant, and arcade attendant; (2) whether the ALJ properly considered the treating physicians'[4] opinions; (3) whether the ALJ posed a complete hypothetical to the vocational expert; and (4) whether the ALJ properly considered the type, dosage, and side effects of plaintiff's medications.  (Joint Stipulation ("Joint Stip.") at 2-3.)

**I.   Plaintiff's Contention That Her RFC Is Inconsistent With The Jobs Found By The ALJ Fails.**

At step five of the sequential evaluation process, the Commissioner has the burden to show that a claimant is capable of performing a job that exists in substantial numbers in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  The Commissioner must take into consideration the claimant's RFC, age, education, and work experience.  *Id.* at 1100.  The Commissioner may satisfy this burden by obtaining the testimony of a vocational expert or referring to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2.  *Id.* at 1101.

Plaintiff contends that the ALJ erred at step five by improperly determining that plaintiff "had the [RFC] to perform other jobs in the

---

[4]   As discussed *infra*, the opinions at issue are not those of treating physicians but, rather, examining physicians.

national economy," such as cashier II[5], parking lot attendant[6], and arcade attendant[7]. (Joint Stip. at 3.) Plaintiff argues that these jobs require a "great amount of handling[] which includes grasping on a frequent basis" and that the ALJ's RFC determination precludes grasping. (Joint Stip. at 4.) Plaintiff further argues that the ALJ's non-

---

[5]   As set forth in the Dictionary of Occupational Titles ("DOT"), a cashier II "[r]eceives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen."  DICOT 211.462-010.

[6]   As set forth in the DOT, a parking lot attendant "[p]laces numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile. Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based on charges for time automobile is parked. Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile. May service automobiles with gasoline, oil, and water. When parking automobiles in storage garage, may be designated Storage-Garage Attendant (automotive ser.). May direct customers to parking spaces" DICOT 915.473-010.

[7]   As set forth in the DOT, an arcade attendant "[a]ssists patrons of amusement facility, and performs minor repairs on game machines: Explains operation of game machines to patrons and exchanges coins for paper currency. Listens to patron complaints regarding malfunction of machines. Removes coin accepter mechanism of machines, using key, and observes mechanism to detect causes of malfunctions, such as bent coins, slugs, or foreign material. Removes obstructions, repositions mechanism, inserts coins, and observes machine operation to determine whether malfunctions are still present. Places out-of-order signs on defective machines and returns money lost in defective machines to patrons. Notifies maintenance department of defective machines, and records times of machine malfunctions and repairs to maintain required records. Observes conduct of patrons in facility to ensure orderliness, and asks disruptive patrons to leave."  DICOT 342.667-014.

disability finding and the vocational expert's testimony conflicted with the descriptions of these jobs set forth in the DOT, and neither articulated reasons for such departure as required.  (Joint Stip. at 4-5.)

Plaintiff's claim is without merit.  The ALJ's finding that plaintiff is capable of performing the jobs of cashier II, parking lot attendant, and arcade attendant is proper.  Contrary to plaintiff's assertion, grasping and handling are not the same.[8]  *See, e.g.,* Olley v. Astrue, 2008 WL 4554883, *4 (C.D. Cal. Oct. 9, 2008)(hypothetical, which was consistent with the RFC, distinguished between handling and grasping); Dixon v. Astrue, 2008 WL 3984594, *11 (N.D. Cal. Aug. 27, 2008)(RFC distinguished between handling and grasping).  Although Social Security Ruling ("SSR") 85-15 describes "handling" as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands," this simply means that handling may include grasping, not that it must include it nor that it involves frequent grasping.  The act of grasping requires a **firm** hold or grip.[9]  Handling can mean simply

---

[8]   Plaintiff and defendant disagree over whether the ALJ intended the grasping limitation to preclude any type of grasping as plaintiff argues or only "power grasping" as defendant argues.  (Joint Stip. at 3-7.) Although the ALJ's questioning of the vocational expert and hypothetical presented suggest that the ALJ may have intended to preclude "power grasping" as opposed to all forms of grasping (*see* A.R. 463), the Court need not make such a determination or remand the case for clarification. The ALJ's determination was proper regardless of whether the ALJ intended to preclude "grasping" or "power grasping."

[9]   *See* http://www.thefreedictionary.com/grasp.  Grasp is defined as "to take hold of or seize firmly with or was if with hand" or "to clasp firmly with or as if with hand."  *Id.*   *See also* http://www.merriam-webster.com/dictionary/grasp (defining grasp as "to clasp or embrace especially with the fingers or arms").

touching or using the hands.[10]   It is improper to conflate the two terms.

Further, the vocational expert incorporated the grasping limitation in his finding.   The ALJ determined that plaintiff had the RFC to perform light work[11] with certain limitations, including the requirement that she avoid "power gripping, grasping, or power torquing" with both upper extremities.   (A.R. 15.)   The ALJ posed a hypothetical to the vocational expert, Alan Ey, which included this RFC and limitations. (A.R. 462-63.)   Based on this RFC and limitations, Mr. Ey testified that plaintiff could perform jobs that exist in substantial numbers in the national economy, including cashier II, parking lot attendant, and arcade attendant.   (A.R. 464-65.)   In finding that plaintiff was not disabled, the ALJ properly relied on the vocational expert's testimony. As the ALJ's finding and the vocational expert's testimony that plaintiff could perform these jobs do not deviate from the DOT job descriptions, no explanation was necessary.[12]

Accordingly, the ALJ did not err when she determined that plaintiff could perform the jobs of cashier II, parking lot attendant, and arcade attendant.

---

[10]     *See* http://dictionary.reference.com/browse/handling.

[11]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."   20 C.F.R. § 404. 1567(b).

[12]     Although SSR 00-4p requires that an ALJ expressly ask a vocational expert whether his testimony conflicts with the DOT, the ALJ's failure to do so here was harmless error, as there is no departure from the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152-54 n.19 (9th Cir. 2007).

II.  **The ALJ's Rejection Of The Opinions Of The Examining Physicians Does Not Warrant Reversal**.

        In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d)(1)-(2).  The opinions of treating physicians are entitled to the greatest weight because the treating physician is hired to cure and has a better opportunity to observe the claimant.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).  When contradicted by another doctor, the ALJ may not reject the opinion of a treating physician without providing "specific and legitimate" reasons supported by substantial evidence in the record.  *Id*.  Similarly, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician" and "specific and legitimate reasons supported by substantial evidence" for rejecting a contradicted opinion.  *Id*. at 830-31.  Widmark 454 F.3d at 1066-67.

        Plaintiff contends that the ALJ improperly rejected the opinions of two physicians:  Dr. Gregory B. Kirkorowicz; and Dr. James D. Brown.[13]

_____

[13]  Plaintiff also argues that the ALJ improperly rejected the opinion of an unidentified physician who completed the Medical Opinion Re: Ability to Do Work-Related Activities (Physical) dated August 1, 2007.

(Joint Stip. at 7-9.)  Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions.  (Joint Stip. at 9.)

As an initial matter, although plaintiff characterizes Dr. Kirkorowicz and Dr. Brown as treating physicians, the record reflects that both are actually examining physicians.  Both physicians examined plaintiff in connection with her worker's compensation case.

*Doctor Kirkorowicz*

On February 28, 1991, Dr. Kirkorowicz examined plaintiff and issued a Permanent and Stationary Report of the same date detailing his findings and conclusions (the "February 1991 Kirkorowicz Report"). (A.R. 384-89.)  Dr. Kirkorowicz diagnosed plaintiff with:  carpal tunnel bilateral, status post carpal tunnel release right wrist; chronic cervical sprain; herniated nucleus pulposus, lumbosacral region, L-4/L-5 and L-3 and L-4 levels; chronic low back pain secondary to the herniated disc and lumbosacral sprain; and chronic headaches, muscle tension, vascular type.  (A.R. 389.)  Dr. Kirkorowicz noted plaintiff's complaints of pain in her right hand, both wrists, low back, right leg, and neck.  (A.R. 384-85.)  Dr. Kirkorowicz noted that plaintiff also complained of a tingling sensation in her right leg and first to third fingers in an unspecified hand, severe headaches, and insomnia.  (A.R. 385.)  Dr. Kirkorowicz further noted that there were Tinel's signs present in both wrists, right hand grip weakness, and tenderness to

---

(Joint Stip. at 8-9.)  The Court does not need to address this opinion, as it is not relevant to the disability time period.

11

palpation in the paraspinal areas of the neck and lumbosacral regions. (A.R. 385, 387-88.) Dr. Kirkorowicz opined that, at the time, it was "not likely that [plaintiff] will make further improvement." (A.R. 389.)

On September 17, 1992, Dr. Kirkorowicz examined plaintiff again and issued a second Permanent and Stationary Report (the "September 1992 Kirkorowicz Report"). (A.R. 392-97.) Dr. Kirkorowicz's diagnoses were almost identical to those made in the February 1991 Kirkorowicz Report. (*Compare* A.R. 389 and 394.) Dr. Kirkorowicz noted that plaintiff had: positive Tinel's sign in both wrists; sensory loss over the right first, second, and third fingers; decreased sensory perception over the left index finger; an abnormal MRI scan indicating disc herniation; and tenderness to palpation in the left paraspinal area, lumbosacral region and paraspinal area of the neck. (A.R. 395-96.) Dr. Kirkorowicz opined that plaintiff was precluded from heavy lifting, prolonged weight bearing, "repetitive grasping, pushing, pulling and repetitively carrying objects over [one] pound." (A.R. 396.) Dr. Kirkorowicz further opined that plaintiff would not be able to work as an assembler and that "[i]n order for her to re-enter the job market, she need[ed] to be retrained for an occupation" that included these restrictions. (*Id.*)

In her decision, the ALJ summarized both the February 1991 Kirkorowicz Report and the September 1992 Kirkorowicz Report. (A.R. 13-14, 16-18.) The ALJ stated that she "assign[ed] little weight" to the **exertional** limitations identified by Dr. Kirkorowicz (A.R. 18), which were no heavy lifting, prolonged weight bearing, and repetitively carrying objects over one pound (A.R. 396). *See* 20 C.F.R. §

12

404.1569a(b).   The ALJ neither rejected the physician's diagnosis nor the nonexertional limitations he imposed.   In rejecting the exertional limitations he imposed, the ALJ stated that there was "no support in the form of clinical signs or symptoms from any treating or examining source in the record" for them.   (A.R. 18.)

The ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Kirkorowicz's exertional limitations.   Although the ALJ only expressly stated one reason for rejecting the limitations, the ALJ provided other specific and legitimate reasons for rejecting Dr. Kirkorowicz's exertional limitations that can be inferred from the decision.   Magallanes, 881 F.2d at 755 (permitting the court to draw inferences of specific and legitimate reasons from the ALJ's opinion).

Based on the record before the Court, it was not error for the ALJ to conclude that there was no clinical support for the exertional limitations.   Although there were clinical signs and symptoms to support Dr. Kirkorowicz's diagnoses (A.R. 396), it is not clear that they supported his exertional limitations.[14]   See Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").   The ALJ notes that, with respect to plaintiff's back pains and related limitations, there were findings of tenderness and some decreased range of motion (A.R. 388, 396), but there was no evidence of "nerve root or

---

[14]   In the September 1992 Kirkorowicz Report, Dr. Kirkorowicz references an orthopedic report, but despite the Commissioner's multiple requests for records from 1991-1995, plaintiff has not provided this report.   (A.R. 395.)

13

cord impingement or encroachment, canal recess or foraminal stenosis, or evidence of post surgical changes or bony abnormalities." (A.R. 17.)

Regarding the carpal tunnel syndrome and Dr. Kirkorowicz's limitation that plaintiff be precluded from "carrying objects over one pound" (A.R. 396), the ALJ is correct that nothing in the record supports such a limitation. The ALJ noted that plaintiff's medical record indicated that the impairments may not have been as limiting as plaintiff alleged. As reported by Dr. Kirkorowicz, plaintiff only required conservative treatment, including non-steroidal and anti-inflammatory medication, for her pain. (A.R. 17, 389.) The record also indicated that the symptoms experienced by plaintiff with respect to her carpal tunnel syndrome were "not persistent throughout." (A.R. 17.) In February 1991, Dr. Kirkorowicz reported that plaintiff had positive Tinel's syndrome bilaterally (A.R. 17, 388), but the laboratory data only revealed abnormal nerve conduction study compatible with right carpal tunnel syndrome (A.R. 17, 388). There was no mention of a similar study for her left wrist. (A.R. 17, 388.) In April 1991, Dr. Brown reported that plaintiff had a positive Phalen's test on her right wrist, but that plaintiff also reported pain in her left wrist. (A.R. 17, 406.) In May 1992, Dr. Todd Katzman, a treating physician, reported that plaintiff experienced numbness, tingling, and pain in her left hand and wrist, as well as pain, but no sensory loss, in her right wrist.[15] (A.R. 17, 381.) In September 1992, Dr. Kirkorowicz reported sensory loss in the fingers of the right hand and decreased sensory perception

---

[15]   During plaintiff's May 1992 examination by Dr. Katzman, he conducted both the Tinel's and Phalen's tests. (A.R. 379.) Both tests were negative for the right hand and positive for the left wrist. (*Id.*)

1  in one finger of the left hand.  (A.R. 17, 396.)  The ALJ further noted
2  that plaintiff did not want to proceed with surgery on her left wrist
3  for carpal tunnel syndrome.  (A.R. 16, 381.)

5      The ALJ also relied on the opinions of three other physicians in
6  rejecting Dr. Kirkorowicz's exertional limitations.  The three other
7  physicians and Dr. Kirkorowicz generally were in agreement that
8  plaintiff suffered from the impairments of bilateral carpal tunnel
9  syndrome and back pain.  The four also agreed that plaintiff
10  consequently required certain limitations.  The physicians, however,
11  reached different conclusions as to the nature and extent of the
12  exertional limitations required.  With respect to plaintiff's back pain,
13  Dr. Brown precluded plaintiff from "heavy lifting," Dr. Katzman
14  precluded plaintiff from lifting greater than 20 pounds, and Dr. Sami
15  Nafoosi, a medical expert, opined that plaintiff could lift 20 pounds
16  occasionally and ten pounds frequently. (A.R. 381, 407, 458.)  With
17  respect to plaintiff's carpal tunnel syndrome, Dr. Katzman, Dr. Brown,
18  and Dr. Nafoosi imposed no limitation on plaintiff from carrying
19  objects, much less a limitation as restrictive as precluding plaintiff
20  from "repetitively carrying objects over one pound." (A.R. 18-19.)  As
21  within her power when there is more than one rational interpretation of
22  the medical evidence, the ALJ specifically noted that she gave greater
23  weight to the opinion of Dr. Katzman, because he was a treating
24  physician (A.R. 18), and to the opinion of Dr. Nafoosi, because he
25  reviewed plaintiff's entire medical file and was familiar with Social
26  Security Administration policy (A.R. 19.)  *See* Thomas v. Barnhart, 278
27  F.3d 947, 957-58 (9th Cir. 2002)(stating that when there is conflicting
28  medical evidence, it is the purview of the ALJ to resolve the

conflicts); <u>Andrews</u>, 53 F.3d at 1039-40 (same).

Finally, the ALJ also considered plaintiff's general credibility in considering how to resolve the conflict in the medical evidence. (A.R. 17-18.) *See* <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989) (disregarding treating physician's opinion because it was premised on plaintiff's subjective complaints, which the ALJ had already discounted). The ALJ noted that, at the hearing, plaintiff was evasive and vague. (A.R. 17.) Plaintiff was often unable to provide information concerning: her dates of employment, employer's name, and job duties; how much she was paid to babysit her grandchildren;[16] the amount and date of her worker's compensation settlement; and amount of time between her carpal tunnel surgeries. (A.R. 17-18, 445-57.)

Even assuming that the ALJ's express reason for rejecting Dr. Kirkorowicz's exertional limitations was not specific and legitimate, the error would be harmless. As discussed above, the ALJ had other specific and legitimate reasons for rejecting Dr. Kirkorowicz's exertional limitations and, thus, would have reached the same disability determination in any event. Further, Dr. Kirkorowicz, Dr. Katzman, and Dr. Brown all noted that plaintiff was qualified for vocational rehabilitation, thus indicating an ability to work.[17] (A.R. 383, 396,

---

[16] From 1999 through 2002, plaintiff was paid through the Orange County Children's Society/Welfare Program to babysit her grandchildren for about 30 hours a week. (A.R. 93.) The Social Security Administration considered this work as an "unsuccessful work attempt," as plaintiff's income was under the SGA limit. (*Id.*)

[17] Although Dr. Kirkorowicz concluded that plaintiff was qualified for vocational rehabilitation, he opined that it would "difficult or impossible" to retrain plaintiff due to her inability to speak English

402.)

Accordingly, the ALJ's rejection of the opinion of Dr. Kirkorowicz does not warrant reversal.

*Doctor Brown*

On February 12, 1991, Dr. Brown examined plaintiff in connection with her worker's compensation case. (A.R. 400.) Dr. Brown issued an Initial Report of that date, but he did not issue a Permanent and Stationary Report until April 9, 1991 (the "Brown Report") because he had "unanswered questions" and required additional medical information.[18] (*Id.*) In the Brown Report, Dr. Brown summarized plaintiff's medical records from January 20, 1990, through January 15, 1991.[19] (A.R. 401-05.) Dr. Brown noted that plaintiff complained of slight pain in the wrists, cervical spine, low back, and right knee. (A.R. 406-07.) Dr. Brown diagnosed plaintiff with: a cervical sprain; bilateral carpal tunnel syndrome, status postoperative on the right; low back sprain; and internal derangement of the right knee. (A.R. 406.) Dr. Brown opined that patient was precluded from heavy lifting, repetitive heavy gripping, and lengthy standing or walking. (A.R. 407.) Dr. Brown further opined that plaintiff required vocational rehabilitation. (*Id.*)

---

fluently. (A.R. 396.) The Court notes that Dr. Kirkorowicz is not a vocational expert.

[18] Dr. Brown stated that his Initial Report "should be considered a part of" his Permanent and Stationery Report. (A.R. 400.) The Initial Report, however, is not included in the record.

[19] Dr. Brown reviewed the medical records from plaintiff's treating physicians. Dr. Brown was not a treating physician.

17

1    In her decision, the ALJ summarized the Brown Report.  (A.R. 14,
2    18.)   The ALJ gave the Brown Report some weight but rejected the
3    exertional limitations identified by Dr. Brown, stating that there was
4    "no support in the form of clinical signs or symptoms" for the "lifting
5    and standing/walking limits."  (A.R. 18.)   These limitations relate to
6    plaintiff's back pain and lower extremity at the time of the
7    examination.  (A.R. 407.)

8

9    The ALJ did not err.  The ALJ provided specific and legitimate
10   reasons supported by substantial evidence for rejecting Dr. Brown's
11   exertional limitations.  As with Dr. Kirkorowicz, there is evidence to
12   support Dr. Brown's impairment findings, but such evidence does not
13   necessarily support the exertional limitations.  Other than the nuclear
14   magnetic resonance scan findings, some of which were negative (A.R. 406-
15   07), the record before the Court contains no mention of the actual
16   examination and tests Dr. Brown conducted.  Further, as discussed above,
17   the ALJ noted that the medical evidence and record suggest that
18   plaintiff's back pain was not as limited as alleged.  Plaintiff had a
19   conservative treatment plan.  (A.R. 17.)   There were "minimal findings
20   of tenderness and some decreased range of motion," and there was no
21   evidence of nerve root impingement or encroachment, canal recess, or
22   foraminal stenosis.  (*Id*.)  Plaintiff was also ambulatory, and in 1995,
23   she reported that she was able to engage in semi-sedentary activities.
24   (A.R. 17, 376.)   Consequently, the ALJ's determination that are no
25   clinical signs or symptoms supporting the exertional limitations is a
26   rational interpretation of the evidence.  *See* <u>Andrews</u>, 53 F.3d at 1039-
27   40.

28

18

As also discussed above, the ALJ cited other specific and legitimate reasons for rejecting Dr. Brown's exertional imitations. First, the ALJ properly relied on the opinions of Dr. Katzman, a treating physician, and Dr. Nafoosi, a medical expert, both of whom precluded lifting more than 20 pounds. (A.R. 381, 458.) See Magallanes, 881 F.2d at 751 (stating that the treating physician is entitled to the greatest weight). Dr. Katzman did not place any limitations on standing and walking, and Dr. Nafoosi limited plaintiff's standing and walking to six out of eight hours. (A.R. 458-59.) Second, the ALJ found plaintiff's credibility suspect, noting that she was evasive and vague. (A.R. 17.)

Even assuming that the ALJ's express reason for rejecting Dr. Brown's exertional limitations -- no clinical signs or symptoms -- was not specific and legitimate, the error would be harmless. The ALJ would have reached the same disability determination in any event. In addition to the inferred specific and legitimate reasons stated above, Dr. Brown, himself, opined that plaintiff could perform some work with vocational rehabilitation. (A.R. 407.)

Accordingly, the ALJ's rejection of the opinion of Dr. Brown does not warrant reversal.

**III.  <u>The ALJ Posed A Complete Hypothetical To The Vocational Expert</u>.**

The ALJ may rely on a vocational expert to meet her burden of showing that a claimant is capable of performing work that exists in substantial numbers in the economy. <u>Magallanes</u>, 881 F.2d at 756. In

posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations.  <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-23 (9th Cir. 1988).   The ALJ, however, is not required to include all limitations asserted by the claimant.  <u>Magallanes</u>, 881 F.2d at 756.   Instead, it is proper for the ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record.  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-64 (9th Cir. 2001).

Here, the ALJ asked the vocational expert the following hypothetical question[20]:

> This individual can occasionally lift 20 pounds, frequently lift ten pounds, sit eight hours out of an eight-hour day, stand or walk six hours out of an eight-hour day.  She must be able to change positions briefly one to three minutes every hour.  She can occasionally climb stairs, bend or balance, stoop, no crouch or crawl.  She's precluded from climbing ladders, ropes, or scaffolding, working at unprotected heights, using vibrating tools, or with both upper extremities any power gripping, grasping, or torquing.

(A.R. 463.)  The vocational expert responded that plaintiff could work as a cashier II, parking lot attendant, and arcade attendant.[21]  (A.R.

---

[20]   The ALJ took plaintiff's language skills into consideration and concluded that plaintiff "has the ability to speak at least very basic English."  (A.R. 463.)

[21]   The vocational expert did not regard plaintiff's past relevant work as a hand packager as requiring power gripping.  (A.R. 463.)

20

464.)

Plaintiff argues that the ALJ erred by failing to include the limitations set forth in the September 1992 Kirkorowicz Report, which precluded plaintiff from "pushing, pulling, and carrying objects repetitively over [one] pound."[22]   (Joint Stip. at 15.)   Plaintiff's argument is unpersuasive.   Out of four opinions, Dr. Kirkorowicz was the sole physician who imposed such a limitation.   As discussed above, it was the duty of the ALJ to resolve conflicts and ambiguities in medical testimony.   Andrews, 53 F.3d at 1039-40.   Based on the medical record before her and plaintiff's lack of credibility, the ALJ properly chose to give weight to the opinions of the other three physicians and reject this limitation.   Thus, the ALJ properly excluded these limitations from the hypothetical.   The ALJ's hypothetical to the vocational expert set out all of plaintiff's limitations that were supported by medical evidence.

Accordingly, the ALJ posed a complete hypothetical to the vocational expert.   See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed but had failed to prove.").   Thus, no error occurred.

---

[22]   Plaintiff also argues that the ALJ improperly failed to include the findings from the Medical Opinion Re:   Ability to Do Work-Related Activities (Physical), dated August 1, 2007.   (Joint Stip. at 15.)   As the Court stated supra, this opinion is not relevant to the period at issue.

21

**IV.  There Is No Reversible Error With Respect To The ALJ's Consideration Of The Side Effects Of Plaintiff's Medications.**

Pursuant to SSR 96-7p, an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." However, an ALJ need only consider those medication side effects that have a "significant impact on an individual's ability to work." Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993)(citation omitted).  Side effects of medications not severe enough to interfere with a claimant's ability to work are properly excluded from consideration. See Osenbrock, 240 F.3d at 1164 ("There were passing mentions of the side effects of [the claimant's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [the claimant's] ability to work.").

Plaintiff contends that the ALJ failed to consider and discuss the type, dosage, and side effects of plaintiff's medications. (Joint Stip. at 16-18.)  Plaintiff, however, has not met her burden to show that the use of medications, and any side effects therefrom, had a negative effect on her ability to work.  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)(stating that a claimant bears the burden of proving that her medication impairs her ability to work).

Plaintiff alleges that she experiences a number of side effects from various medications that she is currently taking. (Joint Stip. at 17.)  Even assuming that plaintiff actually experiences side effects that negatively affect her ability to work from her current medications,

such side effects are irrelevant to her application.  Plaintiff does not allege that she experienced any side effects from the medications she took during the period of alleged disability.  In fact, plaintiff does not even name any of the medications she took from 1991 through 1995.

Thus, plaintiff did not meet her burden of demonstrating that her use of medications impaired her ability to work.  Accordingly, there was no error regarding the side effects of plaintiff's medication.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error.  Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 19, 2010

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

23